**Donna SWEENEY, Frances Marquis and Joseph Covill, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**John J. AFFLECK, Individually and in his Capacity as Director of the Rhode Island Department of Social and Rehabilitative Services, and Richard Schweiker, as Secretary of the Department of Health and Human Services, Defendants.**

**Civ. A. No. 83–004B.**

United States District Court,
D. Rhode Island.

Feb. 4, 1983.

Barry Best, Cynthia Mann, Rhode Island Legal Services, Inc., Providence, R.I., for plaintiffs.

Everett Sammartino, Asst. U.S. Atty., Providence, R.I., Nancy S. Nemon, Deputy Regional Atty., Dept. of Health and Human Services, Boston, Mass., William Walsh, Sp. Asst. Atty. Gen., Providence, R.I., and Robert Fallon, Cranston, R.I., for defendants.

## OPINION AND ORDER

FRANCIS J. BOYLE, Chief Judge.

Plaintiffs bring this motion for preliminary injunction challenging the application of the so-called "lump sum" rule contained in the 1981 amendments to the Aid to Families with Dependent Children (hereafter "AFDC") program. This "lump sum" rule was contained in Section 2304 of the Omnibus Budget Reconciliation Act of 1981, Pub-

lic Law 97–35, which added a new Section 402(a)(17) to the Social Security Act, 42 U.S.C. § 602(a)(17).

In response to this 1981 amendment Defendant Schweiker, as Secretary of the United States Department of Health and Human Services, amended his regulations at 45 C.F.R. § 233.20(a)(3)(ii)(D). Similarly Defendant Affleck, as Director of the Rhode Island Department of Social and Rehabilitative Services, promulgated additional regulations concerning the treatment of "lump sum" income. These regulations are found under Rhode Island *SRS Manual* § 207, pp. 23–26.

These state and federal regulatory provisions dictate that when *any* AFDC recipient receives nonrecurring "lump sum" income, a fixed period of automatic ineligibility is imposed. During this fixed period of ineligibility AFDC benefits are denied to the entire family. The period of ineligibility is based upon the size of the "lump sum" and the applicable AFDC monthly payment standard. This mandatory period of ineligibility continues without regard to the fact that the "lump sum" may be exhausted and without consideration of the circumstance under which the "lump sum" is exhausted. The family is then left totally without income.

Plaintiffs challenge the state and federal regulatory provisions relating to the treatment of "lump sum" income as being inconsistent with the controlling provision of the Social Security Act, 42 U.S.C. § 602(a)(17). Plaintiffs contend that § 602(a)(17) applies only to AFDC recipients with earned income at the time the "lump sum" was received. The named Plaintiffs are all former AFDC recipients whose aid was terminated due to the receipt of a "lump sum" of income. All three named Plaintiffs were without any earned income at the time the "lump sum" payment was received. Plaintiffs seek a preliminary injunction on behalf of themselves and for all others similarly situated.

Plaintiffs request that this action be determined to be a class action. The Court, at this time, declines to undertake such a con-

sideration. The Motion for Preliminary Injunction will be confined to the three Plaintiffs named in Plaintiffs' Amended Class Action Complaint.

All three Plaintiffs are parents of minors. Plaintiffs were AFDC recipients in 1982, with the AFDC benefits being their only source of income. During 1982 Plaintiffs received a "lump sum" payment and, as a result, no longer were deemed eligible for AFDC benefits. All three Plaintiffs have totally exhausted their "lump sum." There is no evidence that any Plaintiff deliberately either expended monies in order to qualify for AFDC benefits or transferred funds to others in order to qualify. Plaintiffs are now without income and without any means to support their families.

Donna Sweeney is the mother of four children, aged ten, eight, six and four months. In January of 1982, Plaintiff Sweeney was a recipient of AFDC benefits for herself and three minor children. Plaintiff did not have any other source of income. On or around January 11, 1982, Plaintiff received payment in settlement of a claim arising out of an automobile accident. From the total settlement of $25,000 Plaintiff received a check for $12,000; $13,-000 was paid for attorney's fees and hospital bills.

The day Plaintiff Sweeney received her "lump sum" settlement, she informed the Department of Social and Rehabilitative Services that she would no longer be requiring benefits as she was taking her family to Florida. Plaintiff Sweeney purchased a 1979 Toyota for $3,550 and left for Florida that same day. Plaintiff was accompanied by her three children and a male companion. Portions of her settlement money were used for transportation and lodging costs on the journey to Florida. Upon her arrival a further $2,100 was spent for a security deposit and required rent to secure an apartment for her family.

Plaintiff Sweeney's attempt to start a new life in Florida proved disastrous. In February her car had to be sold for a substantial loss. Her male companion had used the car and did not add oil, resulting in a $900 engine replacement. Plaintiff Sweeney eventually transferred her car and $500 to a dealer to purchase a 1974 Chevrolet. A substantial part of the "lump sum" Plaintiff Sweeney received was forcibly taken from her by her male companion. Between $5,000 and $6,000 was either stolen or extorted from her by him. On a number of occasions money was taken by him to support his drinking habit and she was beaten by him to force her to sign over her traveler's checks, which she did.

Plaintiff had exhausted virtually all of her resources, including her "lump sum" payment, by the end of April, 1982. Following her eviction from her Florida apartment, Plaintiff and her three children returned to Rhode Island. Upon her return to the State, on May 1, 1982, Plaintiff Sweeney reapplied for AFDC benefits. Plaintiff presented the receipts she had retained to show that her "lump sum" was no longer available to support her family. Plaintiff Sweeney was informed that under the state policy her three minor children were nonetheless ineligible to receive further AFDC benefits until approximately March, 1984.

From May, 1982 to October, 1982 Plaintiff was without any income and was unable to provide a home for her family. Her three older children have been temporarily placed with their father, although Plaintiff retains legal custody by decree of the Rhode Island Family Court.

In September, 1982 Plaintiff gave birth to a baby. Since October of 1982 Plaintiff Sweeney has received AFDC benefits for her baby, but not for herself. Plaintiff Sweeney and her baby did not have a home of their own. Following her discharge from the hospital, Plaintiff and baby resided with a friend. From November 19 to December 27 they resided at an emergency shelter normally limited to use by battered women and children. On December 27, Plaintiff and her baby left the emergency shelter and, with nowhere else to go, stayed in her car in Providence for two days. Plaintiff and her baby thereafter stayed in a private home and yet another emergency shelter.

On January 10, 1983 the Department for Children and Their Families (DCF) took physical custody of Plaintiff's four-month-old infant. On January 12, 1983 DCF obtained temporary custody of the baby, due to Plaintiff's financial inability to provide basic necessities for the child.

Plaintiff currently resides with a volunteer from one of the emergency shelters at which Plaintiff and her baby stayed. Without AFDC benefits Plaintiff has no income, no home and she is separated from all of her children.

Plaintiff Frances Marquis is the mother of three minor children, aged ten, nine and four years. Plaintiff Marquis had been receiving AFDC benefits since 1976. In January, 1982 Plaintiff Marquis received an insurance payment of approximately $20,000, paid upon the death of a fourth child. At the time she received the insurance payment AFDC benefits were her sole source of income.

Plaintiff Marquis immediately reported the receipt of the insurance payment. Plaintiff was then informed that she would be ineligible for further AFDC benefits for herself and her three minor children until at least March, 1985.

Between January, 1982 and November, 1982 Plaintiff Marquis exhausted all of her resources, including the $20,000 insurance payment. A large portion of the money was spent on funeral expenses for Plaintiff's son. Household items including beds for her children, sheets, blankets and clothing were purchased. In addition, back bills were paid, including a winter's gas bills and electric bills. A 1974 Pinto was purchased, and that car was later traded for a 1972 Chevrolet. The remaining money was spent on food and basic necessities.

Plaintiff Marquis reapplied for AFDC benefits in early November, 1982, and was denied those benefits on November 19, 1982. Plaintiff Marquis currently receives food stamps, housing and utility subsidies. Irregular weekly payments from her ex-husband are Plaintiff Marquis' only source of cash income.

Plaintiff Joseph Covill is the father of two minor children, aged four years and twenty months. In March, 1982 Plaintiff Covill was a recipient of AFDC benefits for himself, his wife and his two daughters when he received payment for the settlement of a claim arising out of an automobile accident. Out of a total settlement of $9,000, Plaintiff received only $5,700; the balance was used to pay medical bills and attorney's fees.

Plaintiff reported his settlement payment and was determined to be ineligible for further AFDC benefits. Plaintiff's period of ineligibility was stated by various Department of Social and Rehabilitative Service employees to extend until April, 1983 at the earliest, with dates as late as January, 1984 also having been quoted.

Plaintiff and his wife separated in March of 1982, with Plaintiff retaining the custody of his two children. A portion of the funds received from the accident settlement went directly to another attorney, as $1,800 was paid by the attorney who represented Plaintiff in his accident claim directly to the attorney who represented him in a divorce action.

By May of 1982 the remaining $3,900 of the settlement sum had been spent. Overdue mortgage payments of $1,228, past-due utility bills of $775, past-due consumer debts of $450 and a one time payment of $500 to Plaintiff's wife under the terms of their divorce agreement rapidly depleted the settlement. The remaining money was spent on the day-to-day living expenses of his family. In May Plaintiff Covill reapplied for AFDC benefits. Plaintiff was denied benefits due to Defendant's "lump sum" policy. Plaintiff managed to make $500 from carpentry work in May.

In May, 1982, however, Plaintiff injured his hand. The injury required surgery, leaving Plaintiff unable to work from June to September. In November of 1982 Plaintiff Covill was again able to find work, and received gross earnings of about $600. Plaintiff has not worked since November, although he has been seeking employment.

Since May, 1982, Plaintiff Covill has had to borrow approximately $1,000 to pay for the day-to-day living expenses of his family. Plaintiff secured this loan by using his 1977 Chevrolet as collateral. Plaintiff further has had to sell household furniture to support his family.

Plaintiff Covill is currently without any source of income. Plaintiff is three months behind in paying his electric bill and five months behind in paying his telephone bill. Partial payments through a special heating assistance program have enabled Plaintiff to keep his gas connected. Plaintiff Covill is unable to make his current mortgage payment.

It is against this backdrop of hardship that Plaintiffs have sought relief from this Court. Plaintiffs Sweeney and Marquis' application for a Temporary Restraining Order was granted on January 7, 1983. On January 17, 1983 an Amended Complaint was filed, in which Joseph Covill became a party to this action. All three Plaintiffs now seek a preliminary injunction which would enjoin Defendants from applying the "lump sum" income rule of *SRS Manual* § 207 pp. 23–26 and 45 C.F.R. § 233.-20(a)(3)(ii)(D) to the named Plaintiffs in determining their eligibility for AFDC benefits.

Plaintiffs must satisfy four criteria before they may obtain a preliminary injunction. The Court must find: (1) that Plaintiffs have shown a strong likelihood or probability of success on the merits; (2) that Plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that such injury outweighs any harm which granting injunctive relief would inflict on the Defendants, *i.e.* that the balance of hardship tips decidedly in Plaintiffs' favor; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981); *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 276–277 (1st Cir.1981). Although each of these criteria must be met, the probability of success on the merits component "looms large" in First Circuit

cases. *Auburn News Co., Inc. v. Providence Journal Co., Id.* at 277. Therefore, at the outset, Plaintiffs' probability of success on the merits of their claim will be considered.

At the heart of the Plaintiffs' claim lies a question of statutory interpretation. The statute at issue is Congress' amendment to the Social Security Act, which provided a new section 402(a)(17), 42 U.S.C. § 602(a)(17). That amendment provides as follows:

[A State plan for AFDC must]

(17) provide that *if a person specified in paragraph 8(A)(i) or 8(A)(ii)* receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

—Omnibus Budget Reconciliation Act of 1981 Pub.L. 97–35. § 2304. 95 Stat. 845 (1981) (Emphasis added).

The amendment adds a "lump sum" rule which in turn refers to paragraphs 8(A)(i) or 8(A)(ii). Those sections provided:

[A State plan for AFDC must]

(8)(A) provide that, with respect to any month, in making the determination [of need] under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in

accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same house as such relative and child) whose needs are taken into account in making such determination, the first $75 of total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month); .....

—Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, § 2301, 95 Stat. 843 (1981)

In response to these 1981 changes in federal law Defendant Schweiker amended his regulations at 45 C.F.R. § 233.20(a)(3)(ii)(D) by adding this language:

... When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility.....

A similar rule was adopted by Defendant Affleck at *SRS Manual* § 207, pp. 23–26.

Plaintiffs claim that the statutory provisions are very clear. Plaintiffs argue that, by its own terms, the "lump sum" rule applies only to those persons specified in paragraphs 8(A)(i) or 8(A)(ii). Those sections, in turn, only describe persons who are recipients of earned income. Therefore, Plaintiffs contend that the federal and state regulatory provisions improperly extend the application of the "lump sum" rule to AFDC families who are not recipients of earned income.

Defendants contend that the statutory provision found at 42 U.S.C. § 602(a)(17) applies to all persons within the AFDC assistance unit, not just to AFDC recipients with earned income in the month the "lump sum" was received. Defendants reach this conclusion by noting that 42 U.S.C. § 602(a)(17) specifically refers to § 602(a)(8)(A)(i) and (ii). The first sentence of § 602(a)(8)(A) in turn refers to the determination of need, made under 42 U.S.C. § 602(a)(7), for all individuals included in the AFDC grant. Therefore, Defendants interpret the reference in 42 U.S.C. § 602(a)(17) to "persons specified in paragraph 8(A)(i) or (ii)" as a shorthand reference which must be read together with § 602(a)(7). As a result, the "lump sum" rule, Defendants argue, applies to all eligible persons included in the AFDC grant without regard to whether they may or may not have earned income. Defendants further argue that the specific reference to § 602(a)(8)(A)(i) or (ii) simply codifies the procedure to be applied to recipients who have earned income.

Defendants' contention that Congress adopted a shorthand route in § 602(a)(17) to refer to all AFDC recipients is not persuasive. The only reference to the all encompassing provisions of § 602(a)(7) is found in the introductory sentence of § 602(a)(8)(A). If Congress indeed intended such a shorthand reference to all AFDC recipients, the further specifications of subsections (i) and (ii) would be completely meaningless and unnecessary. Defendants' construction ignores the clear language Congress used; that the so-called "lump sum" rule would apply to "a person specified in paragraph 8(A)(i) or 8(A)(ii)." Those particular paragraphs specify certain dependent children who are students, 8(A)(i), and a person who has earned income, excluding the first $75 of that income, 8(A)(ii). Further weighing against Defendants' interpretation is the fact that 42 U.S.C. § 602(a)(8) historically has always

been the AFDC section dealing with earned income.

The 1981 Omnibus Budget Reconciliation Act (OBRA), of which the 1981 "lump sum" rule was a part, itself provides proof that Congress knew how to apply new amendments to *all* AFDC recipients in an unambiguous manner. Section 602(a)(31), a "stepparent deeming" provision, was adopted contemporaneously with § 602(a)(17). In § 602(a)(31) Congress enacted a provision which was intended to apply to *all* AFDC recipients. Congress provided:

> [A State plan for AFDC must] provide that, *in making the determination for any month under paragraph [602(a)(7),* the State agency shall take into consideration [certain income of a stepparent].
> —OBRA, Pub.L. 97–35, § 2306, 95 Stat. 846 (1981) (Emphasis added).

Congress referred to § 602(a)(7) directly to create a new income counting rule which applied to all AFDC families. Similar language could have been used in § 602(a)(17) if Congress had intended the "lump sum" rule to apply to all families. Under Defendants' interpretation, § 602(a)(17) refers to all applicants because it specifically refers to § 602(a)(8)(A)(i) and (ii) which are preceded by an introductory sentence in § 602(a)(8)(A), which in turn refers to § 602(a)(7). In light of Congress' clarity in designating provisions applicable to all AFDC families within the OBRA itself, the Court finds it unlikely that such an ambiguous and tortuous "shorthand" route would have been employed to apply the "lump sum" rule to all AFDC families.

Plaintiffs argue that the words of the "lump sum" statutory provision are susceptible of but one reading and that reference to legislative history is both unnecessary and inappropriate. The Court agrees that "Absent a clear indication of legislative intent to the contrary, the statutory language. controls its construction." *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981). Defendants argue, however, that the clear language of the statute does not resolve the issue in Plain-

tiffs' favor. Rather, Defendants contend that the legislative history of § 602(a)(17) clearly indicates that the word-by-word interpretation urged by Plaintiffs is contrary to the intention of the legislator.

Defendants contend that the "lump sum" payment rule was adopted and applied to all AFDC families to correct a perceived problem in the existing law. As the lynchpin of this argument Defendants point to the following Budget Committee Report on the OBRA:

> *Present law.* Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.
> *Committee amendment.* The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. *The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility.* The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months.
> Senate Report (Budget Committee) No. 97–139, 97th Cong., 1st Sess., June 17, 1981, *reprinted in* U.S.Code, Cong. & Adm.News, Vol. 7A, Sept. 1981, pp. 396, 771. (emphasis added).

Defendants point out that the report speaks only of the "AFDC family," and not "AFDC families having earned income." Defendants contend that the congressional intention was to encourage the full use of other resources instead of AFDC, and see no basis for distinguishing between persons who have earned income in the month of receipt and persons who do not.

The legislative history of the "lump sum" rule does not clearly indicate that the rule was intended to apply to all AFDC recipients. Support in the legislative history is found for the congressional intention to ap-

ply the "lump sum" rule to only AFDC recipients with earned income. The comprehensive Budget Committee report on the Omnibus Budget Reconciliation Act also contains the following summary of the legislative change:

*Count lump-sum payments.*

.　　.　　.　　.　　.

The committee amendment would require that large payments, *together with other income remaining after the application of disregards,* be considered available to meet ongoing needs in the AFDC program. If such income exceeds the standard of need, the household would be ineligible for aid. Any amount of the income that exceeds the monthly needs standard would be divided by the monthly needs standard, and the household would be ineligible for aid for the number of months resulting from that calculation. Any remaining amount would be counted as income in the first month following the period of ineligibility.

—S.Rep. No. 139, 97th Cong. 1st Sess. 436 (1981), *reprinted in* [1981] U.S.Code Cong. & Ad.News 702. (Emphasis added).

Two aspects of this report support Plaintiffs' position. First, it makes clear that Congress intended the "lump sum" policy to apply only to persons who have "other income." Secondly, the "other income" referred to (*i.e.,* "income remaining after the application of disregards") can only be earned income. The only statutory references to "disregards" in the entire AFDC statute are the references to earned income disregards at 42 U.S.C. § 602(a)(8).

Congress intended the final regulations implementing the OBRA changes, including the "lump sum" rule, to provide a "fair allocation of scarce resources among the most needy," 47 F.R. No. 25, February 5, 1982 p. 5648. Distinguishing between families with earned income and families without such income in applying the "lump sum" rule was one method of assuring that scarce resources would indeed benefit the most needy.

Families with earned income logically stand in a different position with respect to need for AFDC funds, after a "lump sum" has been received, than do families without such income. Families with earned income who are still eligible for AFDC benefits are, by definition, still needy. These families, however, have demonstrated the capability for employment. With another source of income still available after receiving the "lump sum" income the family may be less likely to totally exhaust that sum. The family could be expected to have some other income besides the "lump sum" to fall back on. Further, if the "lump sum" is exhausted before AFDC eligibility is reestablished, a family with earned income has demonstrated the ability to meet at least part of its basic needs, and a "lump sum" payment could equip them with time to meet all of their basic needs.

Any "lump sum" rule could work harsh results. Rhode Island's AFDC standard is only approximately 59% of the current federal poverty line.[1] Therefore, it would be almost impossible for a family that has received a "lump sum" to spend that money at a rate which does not exceed the AFDC standard. It is readily apparent that families who have endured such a sub-poverty existence will purchase what most people would regard as essential items for their family. Any "lump sum" can become quickly exhausted when spent on children's furniture and bedding, a used family car, clothing, housing, funeral expenses, overdue bills and utility costs, apart from funds lost through theft or extortion. When that "lump sum" has been totally exhausted a family without earned income will be left without any income or resources, perhaps for months or even years, until AFDC eligibility can be reestablished.

It is totally reasonable, under these circumstances, that Congress acted to limit the applicability of the "lump sum" rule to those families which have demonstrated ability to meet, at least in part, the basic

---

1. *SRS Manual,* § 209, p. 2: standard of need for a family of four, $520.00 monthly (Dec.— March). 47 F.R. 15418 (April 9, 1982): Poverty line for family of four, $775.00 monthly.

need that arises when the "lump sum" is exhausted. Congress enacted a "lump sum" rule to correct a perceived disincentive to save and budget which had existed within the AFDC program. No period of automatic ineligibility for benefits appears to have been intended to apply to families whose only source of continuing income is AFDC benefits. Limiting such a "lump sum" rule to families with earned incomes would alleviate some of the harsh results which might occur. Thus, scarce monetary resources could be allocated to the most needy: families without any source of earned income.

Applying the "lump sum" rule contained in section 602(a)(17) only to families who had earned income in the month in which the "lump sum" was received is the only interpretation which is consistent with the overall AFDC statutory scheme and purpose. The purpose of the AFDC program is stated in the section authorizing appropriations, 42 U.S.C. § 601. Congress established the AFDC program:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each state to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such state, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life ....

The purpose of the AFDC program has always been to provide for the welfare of children. Further, the integrity of the family unit in the face of economic hardship has been an underlying objective.

The statutory interpretation urged upon the Court by Defendants undercuts these basic principles which are the core of the AFDC program. Indeed, Defendants argued that the purpose of the AFDC program has, in fact, changed. Counsel for Defendants stated that the purpose of the AFDC program "is *not* to bail people out." Rather, Defendants contend, the purpose has been *modified and narrowed, and the* program now aims to create "more respon-

sibility" on the part of recipients. The Defendants do not, and cannot argue that the "lump sum" payments received by the three Plaintiffs in this action were expended as quickly as possible to retain AFDC eligibility. The Court fails to see how "responsibility" is created when "lump sum" funds are exhausted and a family which has no established ability to obtain earned income is left totally without income or resources.

The *purpose of the AFDC program must* be a factor in the interpretation of this "lump sum" provision. The AFDC program has always existed to bail people, specifically children, out, *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974), *Drysdale v. Spirito,* 689 F.2d 252, 253 (1st Cir.1982). The purpose of the 1981 OBRA, as previously noted, was to allocate scarce resources to the most needy. Children whose families have no other cash available apart from AFDC benefits must be considered to be those individuals who the AFDC program, as amended by the OBRA, was designed to protect.

■ The Court finds that Plaintiffs' have demonstrated a strong likelihood or probability of success on the merits of their claim. The Court is persuaded in light of the particular reference to § 602(a)(8)(A)(i) and (ii) contained within § 602(a)(17); the support found in the legislative history for limiting the "lump sum" rule to families with earned income; a logical basis for Congress to distinguish between families with and without earned income; and the fundamental purpose of the AFDC program, that the interpretation of the "lump sum" rule urged by Plaintiffs would probably prevail.

Plaintiffs must satisfy three remaining criteria before they may obtain a preliminary injunction. It must be noted, however, that the "probability of success" component of the test is the only area in which Defendants' arguments are even moderately persuasive. Plaintiffs prevail in the tests concerning irreparable injury, the balancing of harm, and the weighing of the public interest.

When presented with threatened terminations, reductions or denials of desperately needed public assistance benefits this Court has consistently found immediate and irreparable harm to be present. *Roselli v. Affleck,* 373 F.Supp. 36, 49 (D.R.I.1974) *aff'd* 508 F.2d 1277 (1st Cir.1974). The threatened harm to Plaintiffs and their children must be considered both immediate and irreparable.

Neither Plaintiff Marquis nor Plaintiff Covill have income adequate to meet the full cost of their families' needs for food, clothing, shelter and other necessities. Plaintiffs Marquis and Covill have completely exhausted all of their resources. The food stamps, housing benefits and irregular payments from her ex-husband do not cover Plaintiff Marquis' heating, food and clothing needs. Plaintiff Covill does not have the ability to make his mortgage payments or make utility payments for heat. Plaintiff Covill is at risk of foreclosure on both his home and his car. Plaintiff Covill is unable to provide his family with basic necessities, such as clothing, necessary transportation or food beyond his monthly food stamp allotment.

Plaintiff Sweeney's situation is particularly dire. Plaintiff's infant has never settled into a home. Since the birth of the baby in September, mother and child have moved from one emergency placement to another, to homes of friends and acquaintances and even resorted to spending several nights in a car. Plaintiff Sweeney has been separated from her three other children since May. Even her infant has temporarily been taken by DCF, due to her inability to provide a home and necessities of life for the baby.

Plaintiff Sweeney has no money with which to meet the costs of her own shelter, food or clothing. She has been forced to rely upon emergency shelter facilities and those who have been generous enough to help her on a day-to-day basis. Further, without any source of income Plaintiff is threatened with the loss of legal custody of all of her children.

Plaintiffs presented clear and poignant testimony concerning the hardships they have endured and will continue to endure. There is no question that all three Plaintiffs have suffered and will continue to suffer irreparable injury if the injunction is not granted.

The injury to Plaintiffs in this case far outweighs any harm granting injunctive relief would inflict on the Defendants. Defendants argue that granting an injunction would frustrate congressional desire to save AFDC funds as quickly as possible. Further, restoring Plaintiffs to the AFDC rolls, Defendants contend, would increase administrative burdens. The burden imposed on Defendants by granting a preliminary injunction is minimal when compared to the immediate, irreparable and devastating harm to Plaintiffs. This argument proceeds on the assumption that Defendants' construction of the statute is correct, a conclusion which this Court finds unlikely. The scale tips overwhelmingly in Plaintiffs' favor.

The public interest would not be adversely affected by the granting of a preliminary injunction in the present case. Defendants argue that the public at large would suffer if such an injunction was granted, as public funds would be expanded contrary to the cost-cutting directives of Congress. Defendants allege that it would be in the public interest to withhold relief until the case is decided on the merits. Relief withheld from Plaintiffs, however, would be forever lost, as the Eleventh Amendment prohibits retroactive relief against the state defendant, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Without AFDC benefits Plaintiffs do not have the means to get by at even a subsistence level. It is rather in the public interest to see that Plaintiffs' families are dry, warm and fed during these winter months while awaiting a final determination of the rights of the parties.

Therefore, a preliminary injunction is granted. Defendants are enjoined from applying the "lump sum" income rule of 45 C.F.R. § 233.20(a)(3)(ii)(D) and *SRS Manual*

§ 207, pp. 23–26 to all three named Plaintiffs. Defendants shall accept and process applications for AFDC benefits for named Plaintiffs forthwith, and shall make all relevant determinations of need without regard to provisions of the "lump sum" policies specified above.

SO ORDERED.