**Judy CLARK, Plaintiff,**

v.

**Robert C. HARDER, Individually and in his Capacity as Secretary of the Kansas Department of Social and Rehabilitation Services, and Margaret Heckler, as Secretary of the Department of Health and Human Services, Defendants.**

No. 83–4173.

United States District Court,
D. Kansas.

June 23, 1983.

Supplement June 27, 1983.

Joyce Lancaster of Kansas Legal Services of Olathe, Kan., for plaintiff.

Alleen Castellani, Asst. U.S. Atty., Topeka, Kan., for defendant Heckler.

Bruce Roby, Topeka, Kan., for defendant Harder.

MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon the motion of plaintiff, Judy Clark, for a preliminary injunction enjoining defendants and their agents from applying the "lump sum" rule as found in section 3414 p. 3–29 of the Kansas Public Assistance Manual and 45 C.F.R. 233.20(a)(3)(ii)(D) in determining her pending claim for Aid to Families with Dependent Children benefits. On June 13, 1983, this court entered a temporary restraining order against the application of the above-mentioned regulations by defendants against plaintiff. This order shall expire today.

The facts in this case are uncontested at this juncture. For the purposes of this

order, the court shall incorporate the factual findings in our order granting the temporary restraining order as well as the "statement of material facts" contained in defendant Heckler's response in opposition to plaintiff's motion for a preliminary injunction. For the purposes of providing some background for the discussion which follows, we will proceed with a short factual summary.

Plaintiff, a former AFDC recipient, is without income or financial resources. Her AFDC benefits were terminated at the end of April 1983 because she received a lump sum payment (as part of a worker's compensation award) which exceeded the monthly needs standard of eligibility for AFDC in Kansas. This cutoff was the result of a lump sum rule promulgated by defendants in response to amendments to the AFDC program passed by Congress in the Omnibus Budget Reconciliation Act of 1981. The regulations require that persons who receive lump sum payments exceeding the monthly needs standard for an AFDC family unit become ineligible for further AFDC assistance for the number of months calculated by dividing the monthly needs standard into the lump sum received. The lump sum rule was proposed and supported by the Department of Health and Human Services. Plaintiff claims, however, that the regulations implementing the rule against her are contrary to the statutory language passed by Congress. Defendants claim their application of the rule is not contrary to the statute. Plaintiff now has reapplied for AFDC benefits. There has been no argument or evidence that plaintiff qualifies for any exception to the lump sum rule. Thus, the legal issue of whether the lump sum rule passed by Congress applies to plaintiff is the only issue in dispute.

■ Plaintiff must show that she will suffer immediate and irreparable harm without injunctive relief before the court may order injunctive relief. There is no dispute that this showing has been made. Plaintiff is destitute. She needs public assistance.

Plaintiff must also show that the harm she will incur without injunctive relief exceeds the harm to defendants if injunctive relief is granted. At the hearing upon plaintiff's application for a temporary restraining order, the court found that plaintiff satisfied this requisite. Plaintiff further argues that should the court eventually find against plaintiff, defendants can retrieve any benefits paid by reason of injunction orders, but plaintiff has no financial resources to live on should the court refuse preliminary injunctive relief and later hold in plaintiff's favor at a trial on the merits. This argument obviously illustrates an aspect of the balance of harm equation in this case. It does not address plaintiff's probability of success on the merits. Nor does plaintiff explicitly argue that the balance of harm justifies delaying an interpretation of the lump sum rule contrary to plaintiff if the court is firmly convinced that such an interpretation is justified.

In order to justify injunctive relief, plaintiff must also demonstrate that such relief is in the public interest. We reaffirm our previous holding that the public interest is served by injunctive relief in this instance. In the written opposition presented on behalf of defendant Heckler, it is argued that it is not in the public interest to allow public assistance to go to persons benefiting from lump sums while those without lump sums (the "truly needy", dare we say) are not served. This is not the choice before the court, however. If the court grants injunctive relief in this case, benefits will not be taken away from some other person. Nor will preliminary injunctive relief set a precedent endangering the funds for persons without lump sums. In other words, we are not playing a zero-sum game in which some needy person will lose if plaintiff wins. We reaffirm our finding that the public interest is not an obstacle to injunctive relief in this case.

■ Plaintiff must still establish a probability or likelihood of success on the merits to justify injunctive relief. When the other three requisites for injunctive relief

are satisfied, a likelihood of success on the merits is demonstrated if plaintiff "raise[s] questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation ..." *Kenai Oil and Gas, Inc. v. Department of Interior,* 671 F.2d 383, 385 (10th Cir.1982) quoting *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). As mentioned in our earlier order, three other courts have granted motions for preliminary injunctive relief and agreed with plaintiff's interpretation of the lump-sum rule. *Faught v. Heckler,* 577 F.Supp. 1180 (S.D.Iowa 1983): *Sweeney v. Affleck,* 560 F.Supp. 1118 (D.R.I.1983); *Vermeulin v. Kheder,* No. K82–135–CA4 (W.D.Mich., June 3, 1982). After a careful reading of these opinions, the statute in question, and the pertinent legislative history, I conclude that plaintiff has failed to raise questions going to the merits which are serious, substantial, difficult and doubtful. I conclude that defendants have clearly established that the lump sum rule is legally applicable to plaintiff.

Each side argues that the statutory language is clear and supports its interpretation. Plaintiff argues that the lump-sum rule only applies when "a person specified in paragraph (8)(A)(i) or (ii)" receives a lump sum payment and that those persons must have earned income. See 42 U.S.C. § 602(a)(8) and (17). Defendant claims that all persons applying for assistance are covered by paragraph (8)(A)(i) or (ii) by virtue of the reference to paragraph (7) in paragraph (8)(A), and, therefore, all persons applying for AFDC are persons "specified in paragraph (8)(A)(i) or (ii)." Plaintiff claims that if all persons were intended to be covered by the lump sum rule, Congress could have clearly stated as much or made reference to paragraph (7), as it did in paragraph (31) covering stepparent's income disregards. It could also be argued that if Congress intended only persons with earned income to be covered by the lump sum rule, Congress could have clearly stated as much.

It appears to this court that the all-important paragraphs (8)(A)(i) and (ii) do not specify "persons" as much as they specify types and amounts of earned income which are not considered for the purpose of determining need for all persons applying for AFDC. Since all persons applying for assistance have their need determined in accordance with paragraph (8)(A)(i) and (ii), it is possible that all applicants are the persons "specified" for coverage by the lump sum rule. Still, one can legitimately inquire why Congress would "specify" persons for application of the lump sum rule, if it intended to apply the rule to all AFDC applicants. In common parlance, the word "specify" contains some connotation of restriction. If Congress intended to restrict the population to which the lump sum rule applied, perhaps only AFDC recipients with earned income comprise the restricted population. The conclusion we draw from these points and questions is that the statute is ambiguous and that the meaning of the statute should be decided after examining the legislative history of the lump sum rule. Cf., *Tidewater Oil Co. v. United States,* 409 U.S. 151, 157, 93 S.Ct. 408, 412, 34 L.Ed.2d 375 (1972) ("it is essential that ... words of a statute [be placed] in their proper context by resort to legislative history."); *Hunt v. Nuclear Regulatory Commission,* 611 F.2d 332, 336 (10th Cir. 1979) *cert. denied,* 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980) (reference to legislative history appropriate "however clear" the statute's language).

In the court's opinion, the legislative history of the lump sum rule clearly supports defendant's interpretation. The lump sum rule was proposed by the Department of Health and Human Services as a cost-cutting measure and included in a mammoth budget-cutting bill. The testimony of former Secretary Schweiker does not mention any intended dichotomy between applicants with earned income and applicants without earned income. The purpose of the measure as described in the Budget Committee Report was to eliminate the incentive to spend lump sums quickly in order to requalify for AFDC. [1981] U.S.CODE CONG.

& ADMIN.NEWS at 396, 771. AFDC beneficiaries were to be forced to budget the lump sum payments because AFDC benefits would be cutoff for a future period calculated by dividing the monthly needs standard into the amount of the lump sum. The legislative history does not intimate any reason for maintaining the incentive for AFDC recipients without earned income to quickly spend lump sum payments, while cracking down against those with earned income. Nor is any intent to draw a distinction on the basis of earned income evident. Two excerpts from Congressional committee reports are worthy of citation.

The Senate Budget Committee noted with regard to the lump sum rule:

> The committee amendment would require that large payments, together with other income remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program.

[1981] U.S.CODE CONG. & ADMIN. NEWS at 702.

The House Conference Report states:

> Both the House bill and the Senate amendment included the following identical provision which was agreed to by the conferees:

> For purposes of AFDC, income received in a month must be considered available as income in the month it is received and also in future months. Thus, if such income exceeded the standard of need in the months of receipt, the family would be ineligible in that month.

[1981] U.S.CODE CONG. & ADMIN. NEWS at 1341.

■ The absence of any reference to earned income in either report is significant in our opinion. Plaintiff argues and Judge Boyle contended in *Sweeney v. Affleck, supra,* that the phrase "other income remaining after the application of disregards" in the Senate Budget Committee Report, must refer to earned income because "disregards" only apply to earned income. It is more likely in our opinion that the term "other income", as used in the Report, refers to both earned and unearned income.

Judge Boyle also theorized that the reason for making a distinction between persons with earned income and those without earned income, was to assure that persons without earned income had a monetary cushion of AFDC benefits to fall back on if they failed to budget their lump sum payments. According to Judge Boyle, Congress may not have intended persons with earned income to have such a cushion because they could fall back on their earned income if they did not budget their lump sum payments. This theory provides some policy support for granting AFDC benefits to plaintiff. However, courts do not dictate policy in these matters. That is the job of Congress. We find no evidence whatsoever that Congress shared the thoughts of Judge Boyle in passing the lump sum rule.

■ Of course, our interpretation of the legislative history is supported by the regulations of the defendants. These regulations deserve deference as we interpret the lump sum statute, particularly when the statute was proposed by defendant Heckler's agency. *International Nutrition, Inc. v. United States Department of Health and Human Services,* 676 F.2d 338, 342 (8th Cir.1982); see also, *Blue Cross Ass'n v. Harris,* 664 F.2d 806 (10th Cir.1981). In addition, figures supplied by defendant Heckler and her agents indicate that the lump sum rule would cover only 7% of all AFDC recipients if it were construed to apply just to persons with earned income. The court believes an intention to cover only 7% of the AFDC population would be evident in the committee reports if such was the intention of Congress. Evidence that such a limited scope was not intended is supplied by the statements of defendant Heckler's agents who estimate that only a fraction of the estimated savings of the lump-sum rule would accrue if plaintiff's interpretation was upheld.

■ In short, an examination of the legislative history of the lump sum rule eliminates any serious, substantial, difficult, or doubtful question concerning the interpre-

tation of the lump sum rule. Although the court ruled otherwise only ten days ago, that ruling was premised in part upon the finding that there had been insufficient time for a deliberate investigation of the questions raised by plaintiff. The court and the parties have now had time to study the issues. Indeed, the court is unaware of any relevant arguments or authorities that could be presented at trial that have not already been mentioned by the parties. At this juncture, plaintiff has not demonstrated a likelihood of showing that the lump sum rule cannot be legally applied to her. Needless to say, the court does not relish the decision to deprive a person of public assistance. But to rule otherwise, I am convinced, would be to violate my duty to uphold the law as I see it using my best judgment.

Plaintiff's motion for a preliminary injunction is denied.

IT IS SO ORDERED.

### SUPPLEMENT

The court omitted a citation in connection with our statement in our June 23rd order that, "The testimony of former Secretary Schweiker does not mention any intended dichotomy between applicants with earned income and applicants without earned income." The following sources support this statement: *Spending Reduction Proposals: Hearings before the Senate Committee on Finance*, March 17, 1981 at 33 (statement of Richard S. Schweiker); and *Administration's Proposed Savings In Unemployment Compensation, Public Assistance, and Social Services Programs: Hearings before the Subcommittee on Public Assistance and Unemployment Compensation of the House Committee on Ways and Means*, March 11, 1981 at 7–8 (statement of Richard S. Schweiker).

The parties are also informed that on June 23, 1983, the Honorable C. Arlen Beam, United States District Judge for the District of Nebraska, addressed a case with issues similar to the one at bar. In *Douthit v. Heckler*, 577 F.Supp. 88, Judge Beam upheld the Government's interpretation of the lump sum rule but issued a preliminary injunction against the Government until trial or a satisfactory pretermination hearing was held.

The court hereby enters this order to advise the parties of these sources.

IT IS SO ORDERED.

### APPENDIX

### MEMORANDUM AND ORDER

On Friday, June 10, 1983, the above-captioned case came before the court for hearing upon plaintiff's motion for a temporary restraining order enjoining defendants from applying a lump-sum income rule, as promulgated in 45 C.F.R. § 233.-20(a)(3)(ii)(D) and Section 3414 of the Kansas Public Assistance Manual, to deny plaintiff eligibility for Aid to Families with Dependent Children benefits until mid-October 1983. All parties were represented by counsel and evidence was taken. The court took plaintiff's motion under advisement and is now prepared to rule.

The court will not take the time to recite all of the testimony and evidence presented at the hearing. A very brief summary of the pertinent facts follows. Plaintiff, Judy Clark, is 36 years old. She is the mother of a 12 year old son. She is divorced from the father of the son. She was separated from her current husband in June 1982. Plaintiff has no income, savings, or financial resources. She was fired from her last job in the first half of 1982 because of excessive medical absences. Following her termination and the breakup of her marriage, plaintiff suffered a nervous breakdown and was placed in the Rainbow Mental Health Center for a few months, until September 1982. During this time, plaintiff's mother, Mrs. Marion Blaylock, helped take care of plaintiff's son. Mrs. Blaylock is 67 years old. She has no job. Her only income is from Social Security ($458.00 a month) and a regular house payment from her son ($235.00 a month). Mrs. Blaylock lives in Government housing. The regulations of such housing prevent other persons, includ-

ing plaintiff or her son, from living with Mrs. Blaylock for an extended period of time. Therefore, during the time plaintiff was at Rainbow Mental Health Center, Mrs. Blaylock placed plaintiff's son with another couple.

When plaintiff was released from Rainbow Mental Health Center, her mother provided the money to get plaintiff and her son started in an apartment. Plaintiff began receiving AFDC benefits in November 1982. In January 1983, plaintiff received a worker's compensation award for a claim filed in connection with injuries suffered while she was working her last job. The total amount of the award was $3,265.70. Subtracting amounts going to plaintiff's attorney, restitution on a bad check charge, and other bills, plaintiff actually received only $1,469.53. Plaintiff signed this check over to her mother to repay her for the help her mother provided. Plaintiff estimated that her mother actually spent more than the amount of the check for plaintiff and her son during the months when plaintiff was receiving no income or benefits.

The administrators of AFDC discovered plaintiff's worker's compensation award, although plaintiff did not record the award on her monthly report to the AFDC authorities. (Plaintiff did inform defendants of her worker's compensation claim when she applied for AFDC in 1982). Apparently assuming that plaintiff received a nonrecurring lump sum payment of $2,355.53 as worker's compensation (See Notice of Ineligibility), the administrators of AFDC applied the lump sum rule and cutoff AFDC benefits until mid-October 1983.

The cutoff began in May 1983. Since that time, plaintiff has received assistance from various emergency charity organizations and her mother. Plaintiff has virtually reached the limit of assistance from both these sources. Some of the emergency charity is one-time only and cannot be renewed. In addition, plaintiff's mother has suffered medical problems which have de-

pleted her ability to help her daughter. Plaintiff is not receiving child support payments for her son. In short, plaintiff is destitute. Unless she receives some money from some source, she will lose her Government housing. She also lacks money for medical care and other necessities.

In this action, plaintiff challenges the application of the lump-sum rule to her situation. The lump-sum rule is an outgrowth of the 1981 Omnibus Budget Reconciliation Act (OBRA). This Act amended 42 U.S.C. § 602(a)(17) to provide:

if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A);

As applied in this case, the Kansas standard of need applicable to plaintiff was divided into her worker's compensation award (apparently $2,355.53) and assistance was cutoff from May 1983 until mid-October 1983.

Plaintiff argues that the lump-sum rule should only apply to persons who have earned income. According to plaintiff, the "persons specified in paragraph (8)(A)(i) or (ii)" are persons with earned income.[1]

---

**1.** Paragraph 8 provides:

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

Plaintiff also points out that the following passage of the Budget Committee Report on OBRA refers to "other income" together with lump sums, as it describes the lump sum rule.

> The Committee amendment would require that large payments, together with other income remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program. If such income exceeds the standard of need, the household would be ineligible for aid.

[1981] U.S.CODE CONG. & ADMIN. NEWS 702. Finally, plaintiff argues that it is reasonable that Congress should intend the lump sum rule to be applied only to persons with earned income. Plaintiff claims it is unreasonable to expect persons in plaintiff's financial position to spend *less* than the State standard of need when they receive a lump sum, even when they attempt to budget the lump sum. When persons without earned income do so, they are entirely cutoff from income until benefits are reestablished. Persons with earned income can fall back upon the earned income when the lump sum is exhausted.

Defendants do not dispute plaintiff's financial exigency. Nor do defendants claim that plaintiff spent the lump sum she received frivolously or dishonestly. Defendants only argue that the lump sum rule strictly applies to persons without earned income like the plaintiff. They contend that under the lump sum rule plaintiff had a simple choice: she could budget the lump sum over a period of months and repay her mother in some other fashion; or she could repay her mother with the lump sum, lose her benefits, and support herself in some other fashion.

Defendants claim that the persons "specified in paragraph (8)(a)(i) or (ii)" include persons "not engaged in full-time employment or not employed throughout the month" such as plaintiff. Defendants further claim that Congress intended the lump sum rule to apply to persons without earned income. According to defendants, the lump sum rule was a cost-saving measure designed to save five million dollars. If the rule were construed to apply only to AFDC recipients with earned income, it would only cover 7% of the AFDC population and save only $300,000. Defendants contend that the earned income distinction proposed by plaintiff does not make sense without an earned income threshold because a person's income could be as low as a dollar a week. According to defendants, the incentive to budget lump sums and the incentive to work, was intended to apply to all AFDC recipients—not just to persons with earned income.

The court has been referred to three opinions from other United States District Courts. These opinions have ordered preliminary injunctions against the application of the lump sum rule to persons without earned income. *Faught v. Heckler*, 577 F.Supp. 1180 (S.D.Iowa 1983); *Sweeney v. Affleck*, 560 F.Supp. 1118 (D.R.I.1983); *Vermeulin v. Kheder*, No. K82–135–CA4 (W.D.Mich., June 3, 1982).

Four factors must be evaluated in determining whether or not to grant a motion for a temporary restraining order. These factors are: 1) whether the movant will suffer immediate and irreparable harm in the absence of injunctive relief; 2) whether

---

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month);

the movant has a probable chance of succeeding when the merits of the case are presented; 3) the balance of harm among the parties if injunctive relief is granted; and 4) the public interest in granting or denying injunctive relief. See *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). "When all other prerequisites to injunctive relief have been established, plaintiff need only raise 'questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation' to satisfy the requirement of a showing of a likelihood of succeeding on the merits." *Kenai Oil & Gas Inc. v. Dept. of Interior*, 671 F.2d 383, 385 (10th Cir.1982) quoting *Lundgrin v. Claytor, supra*, 619 F.2d at 63.

We believe plaintiff has demonstrated immediate and irreparable harm. Defendants claim somewhat half-heartedly that since plaintiff has been able to survive so far without AFDC benefits, the harm to her of losing AFDC benefits may not be immediate or irreparable. We disagree with this argument. It appears to this court that plaintiff is suffering at this moment from a dire absence of financial resources that can be partially alleviated with AFDC benefits. This harm has been mitigated to some extent by emergency relief, but even this aid appears to be expiring. Plaintiff may soon lose housing for herself and her son unless she receives financial assistance. Money for medical care and other essentials also appears unavailable. This is a sufficient showing of immediate harm to satisfy the standard for injunctive relief. We also hold that the usual rule that monetary damage is not irreparable is inapplicable in this situation. We do not believe a later award of money can repair the damage that might occur to plaintiff if she does not have money to pay for necessary living expenses today. See *Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982).

We also hold that the balance of harm weighs in favor of plaintiff. If defendants are required to pay benefits for a short period to plaintiff, the solvency of Kansas and the United States will not be endangered. On the other hand, plaintiff's ability to support herself and her son is in jeopardy without injunctive relief.

We further hold that the public interest favors an order of injunctive relief. It is not in the public interest to allow plaintiff and her son to become completely destitute and without public assistance. This is the theory of public assistance.

With the establishment of these prerequisites for injunctive relief, the final question becomes whether plaintiff has raised "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." After reviewing the arguments made by both sides, we hold only for the purposes of this order that this requirement has been satisfied. In support of our holding, we note that three other courts have upheld plaintiff's position on a preliminary examination. We further note that both defendants' counsel have remarked that there has been insufficient time for a deliberate investigation into the facts and law in this matter. Thus additional time for research and contemplation appears necessary. Finally, many of the defendants' arguments concerning the percentage of AFDC recipients with earned income and the estimated savings from the lump sum rule were not documented for the court. In sum, serious and substantial questions concerning the interpretation of the OBRA provisions and the legislative history of the provisions have been presented to the court.

Having found that plaintiff has satisfied all of the prerequisites for a temporary restraining order, the court shall order the defendants enjoined from applying the lump-sum rule to plaintiff when plaintiff applies for AFDC. No bond shall be required. See *Ryan v. Shea*, 394 F.Supp. 894 (D.Colo.1974). Any hearing upon a motion for preliminary injunction shall be had June 21, 1983 at 8:30 a.m., unless the parties agree to an extension of this temporary restraining order.

IT IS SO ORDERED.

Dated this 13th day of June, 1983, at Topeka, Kansas.