Gary DOUTHIT, etc., et al., Plaintiffs,

v.

Margaret HECKLER, etc., et al., Defendants.

No. CV 83–L–296.

United States District Court,
D. Nebraska.

June 23, 1983.

John B. Milligan, C.A. Brady, Lincoln, Neb., for plaintiffs.

Sally Johnson, Asst. U.S. Atty., Lincoln, Neb., for defendant Heckler.

Royce N. Harper, Lincoln, Neb., for defendant Dunning.

BEAM, District Judge.

This matter is before the Court upon the application of plaintiff Donna Fouraker (plaintiff) for a preliminary injunction (filing 5). After hearing on May 31, 1983, defendant Gina Dunning in her capacity as Director of the Department of Public Welfare, State of Nebraska, was directed to continue payments to plaintiff pending further order of the Court.

Plaintiff had been receiving monthly payments as Aid to Families with Dependent Children (AFDC). She received several non-recurring lump sum payments which made her ineligible for further monthly aid. These non-recurring payments, which totaled $4,155.50, resulted from social security disability awards. The plaintiff reported the awards as required and was informed that she would lose monthly AFDC benefits as a result of their receipt. The record does not indicate the extent of the information supplied to plaintiff at that time. The federal defendant's brief states that plaintiff was "put on notice that [she] must manage [her] lump money carefully to

make it last for the same period of time as if [she] were receiving the money through AFDC assistance." However, the record, at this point, does not indicate how, if at all, or in what detail this notice was given.

In any event, plaintiff spent all of the lump sum money prior to December 22, 1982, at which time she reapplied for monthly AFDC benefits. The application was approved and benefits were paid. In March of 1983, it was discovered that the Lancaster County Public Welfare Department (Welfare) had, in its view, erred in the reinstatement of benefits to plaintiff. Directions were given to stop the monthly payments. It was determined that plaintiff should have remained ineligible for 11.87 months. This was calculated by dividing the amount of the monthly need standard into the total of the non-recurring lump sum amounts. As a result of this calculation, the purported disqualification period is scheduled to extend through July, 1983.

Factually, then, we are faced with an unemployed mother with a minor son in the household who has no means of support except for her free housing authority quarters and a monthly food stamp allocation valued at $139.00.

The standards for the propriety of the issuance of a preliminary injunction in this action are set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). The *Dataphase* balancing test requires the weighing of four factors:

1. The threat of irreparable harm to the movant;
2. The state of balance between this harm and the injury that granting the injunction will inflict upon opposing parties;
3. The probability that movant will succeed on the merits; and
4. The public interest.

*Id.* at 114.

If the plaintiff is entitled to monthly AFDC payments, the failure to receive them, as due, clearly causes irreparable harm. *Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir.1982).

The Eighth Circuit Court of Appeals, in *Chu Drua Cha*, points out that general agreement exists that retroactive benefits cannot be ordered by this Court. The Circuit Court further states that a person at the economic margin, such as plaintiff here, suffers irreparable injury when timely payments are not made, even if retroactive payments can ultimately be ordered.

Assuming, then, the potential for irreparable harm to plaintiff, factors two and four are not determinative of this particular matter. Accordingly, the crucial issue is whether the plaintiff has any reasonable expectation of prevailing upon the merits of her claim at a trial. I conclude that she has sufficient expectation of prevailing, depending, of course, upon the further development of the facts, to hold this matter in status quo.

The Aid to Families with Dependent Children program is codified at 42 U.S.C. § 601 *et seq.*, as amended. Implementing regulations are contained at 45 C.F.R. § 201 *et seq.*

The present case results from legislative and regulatory interpretations which follow changes in the AFDC program mandated by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. 97–35. First, 42 U.S.C. § 602(a)(7) was amended to read as follows:

[e]xcept as may be otherwise provided in paragraph (8) or (31) and section 615 of this title, provide that the State agency—
(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid;

The statute further states, at 42 U.S.C. § 602(a)(8), as follows:

8(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month).

OBRA also amended the Act to include a new paragraph 17 (42 U.S.C. § 602(a)) which says:

provide that if a person specified in paragraph 8(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

It appears to have been the intent of Congress to temporarily remove eligibility for AFDC payments for certain individuals who receive non-recurring payments and to eliminate the incentive to quickly dissipate such assets. 42 U.S.C. § 602(a)(17) specifies the persons who are subject to this disqualification.

Plaintiff argues that 42 U.S.C. § 602(a)(8)(A)(i) and (ii) limits the disqualification to persons who are receiving "earned income" at the time of receipt of non-recurring payments. This interpretation is supported by the opinion of Chief Judge Francis O. Boyle in *Sweeney v. Affleck*, 560 F.Supp. 1118 (D.R.I.1983). *See also Faught v. Heckler*, CV 83–66–A (S.D. Iowa, April 5, 1983). However, I believe this to be an unduly restrictive reading of the statute given the stated intent of Congress and the clear language of other applicable portions of the Act, as amended.

The legislative history reflects an intention by Congress to disqualify a recipient upon the receipt of non-recurring payments and to remove the incentive to quickly spend such resources.

*Present law*—Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.

*Committee amendment*—The committee believes that lump sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments *has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility* ....

S.Rep. No. 97–139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 771 (Emphasis added).

No statutory language or legislative intent can be found which limits the applicability of the law, as amended, to AFDC

families who are actively "earning" income. In fact, 42 U.S.C. § 602(a)(7)(A) uses the words "other income and *resources*." (emphasis added.) The entire statutory scheme must be considered in interpreting the paragraph in question. Also, since the paragraph, obviously, is susceptible to more than one interpretation, it is proper to give effect to any stated legislative history and intent to determine the true meaning of the paragraph.

Paragraph (8)(A)(i) and (ii) enumerates, generally, (1) a dependent child, (2) a child or relative applying for or receiving AFDC, or (3) any other individual living in the same house as such relative and child whose needs are taken into account. There is no question that plaintiff is a "relative" seeking to continue aid to a dependent child. To modify this general description with the provisions of the paragraph describing the type and amount of "earned income" to be disregarded is to misapply the intended use of the classification. Subparagraph (8)(A)(i) also identifies a dependent child who is a full time or parttime student. Using the rationale advanced by plaintiff, it is just as logical to argue that a non-student dependent child with earned income would be excluded from the application of the disqualification rule referred to in 42 U.S.C. § 602(a)(17). Accordingly, I find that the plaintiff is a person who is subject to disqualification whether or not she has earned income.

The applicability of the disqualification portions of the law, as amended, to plaintiff does not, however, solve the problem. The purpose of the AFDC program is to provide assistance and support to children. *See King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

42 U.S.C. § 602(a)(7)(A) requires that income and resources be considered in determining eligibility. An amended rule interpreting this paragraph in conjunction with the new "lump sum" rule has been adopted by the United States Department of Health and Human Services (HHS). It reads:

(D) Net income, except as provided in paragraph (a)(3)(xii) of this section, and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of receipt of the nonrecurring income or, at State option, as late as the corresponding payment month. For purposes of applying the lump sum provision, family includes the AFDC assistance unit and any other individual whose lump sum income is counted in determining the period of ineligibility. A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the nonrecurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the nonrecurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1982).

■ In this particular case, plaintiff, after expending her non-recurring payments for what, at this point, appears to have been essential needs, reapplied for AFDC payments. As earlier indicated, she was found to be qualified for monthly payments and returned to the payment role. Then plaintiff was again disqualified. There is no indication that she became ineli-

gible *after* a showing that a shortening of the period was inappropriate under 45 C.F.R. § 233.20(a)(3)(ii)(D).[1] AFDC benefits are a matter of statutory entitlement for a person qualified to receive them. *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). *Goldberg* also stands for the proposition that a pre-termination (of benefits) hearing is necessary to provide a recipient with procedural due process. *See* 397 U.S. at 264, 90 S.Ct. at 1018. In this case, I do not purport to determine the procedural requirements for an original disqualification upon receipt of a non-recurring lump sum payment or for shortening the period of ineligibility when a previously terminated individual files an application for reinstatement. Plaintiff is not in such a posture. She was reinstated. Defendant Dunning now seeks to disqualify her again. Under the circumstances, I find that the State must hold a pre-termination hearing to determine whether the non-recurring income was used to meet essential needs and whether the continuance of the period of ineligibility will result in a life threatening situation for plaintiff and her eight year-old child. Although plaintiff's brief seems to concede the absence of an exception under the rule, it is difficult to believe that the absence of food to eat, assuming the exhaustion of the food stamp resource, or the absence of water, electricity, or a heating capability due to unpaid utility bills could not present a life threatening situation. Therefore, the preliminary injunction will be granted.

1. Nebraska, apparently, has not specifically adopted the exception set forth in the last two sentences of 45 C.F.R. § 233.20(a)(3)(ii)(D). However, I find that the exception is either adopted by implication under Nebraska's plan for administering AFDC benefits, or, in the alternative, that a presumption of ineligibility without the availability of a mechanism capable of insuring the viability of the principal purpose of the Act violates due process and equal protection guarantees. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In either event, injunctive relief is proper. The federal defendant contends that the holdings of *Stanley* and companion cases have been modified by *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). However, *Wein-*

*berger* deals with a non-contractual right to begin receiving social security survivor benefits. Here, we have a proposed termination of on-going benefits. The nature of such entitlement is discussed in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and is characterized as "more like 'property' than a 'gratuity.'" *Id.* at 262 n. 8, 90 S.Ct. at 1017 n. 8. The United States Supreme Court further said that, "[p]ublic assistance, then, is not mere charity, but a means to 'promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity.'" *See* 397 U.S. at 265, 90 S.Ct. at 1019. Thus, in my view, the nature of the right involved here is more fundamental than the right at issue in *Weinberger.*