**Outhay THONGSAMOUTH, et al., Plaintiffs, Appellants,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, et al., Defendants, Appellees.**

No. 82–1943.

United States Court of Appeals, First Circuit.

Argued May 4, 1983.
Decided July 12, 1983.

Daniel S. Manning, Dorchester, Mass., with whom Susan Ochs, Boston, Mass., was on brief, for plaintiffs, appellants.

Charles K. Mone, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., and Edith S. Marshall, Atty., Dept. of Health and Human Services, Washington, D.C., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and RE,* Judge.

PER CURIAM:

In this class action plaintiffs appeal an order entered by the District Court of Massachusetts, which converted a previous order of the Court, denying plaintiffs a preliminary injunction, into a final judgment on the merits. The plaintiffs had sought preliminary injunctive relief against both the Secretary of the U.S. Department of Health and Human Services, and the defendant Commissioner of the Massachusetts Department of Public Welfare, preventing them from terminating cash and medical benefits paid to plaintiffs under the Refugee Act of 1980. The benefits were received by plaintiffs until April 1982 under a welfare program administered by the Commonwealth of Massachusetts, and funded by the U.S. Department of Health and Human Services.

The denial of the preliminary injunction was based on the recommendation of a Magistrate who found that plaintiffs had not shown a likelihood of success on the merits. Thereafter, a joint motion was made to consolidate the preliminary injunction hearing with a trial on the merits, and to convert the court's order denying the plaintiffs' motion for the injunction into a final judgment on the merits. The district court granted this motion by order dated September 28, 1982, which order is on appeal.

Plaintiffs maintain that the Secretary of Health and Human Services was without authority to limit the cash and medical benefits to a period of 18 months, and that the Refugee Act of 1980 required those benefits

* Chief Judge, United States Court of International Trade, sitting by designation.

to continue for a period of 36 months.[1] This contention is not new, and the issue has been presented before five other federal district courts.[2] We agree with the judgment on appeal, and with the conclusion of these cases, that the Secretary did not exceed or abuse his authority in issuing the challenged regulations. Since the regulations were a valid exercise of his discretionary authority, we affirm.[3]

█ The extensive briefs and the oral argument presented on appeal have renewed the arguments made in support of the contention that the Secretary of Health and Human Services exceeded his authority. The crux of plaintiffs' argument is that section 412(e) of the Refugee Act of 1980 (8 U.S.C. § 1522(e)(1)) required the payment of special cash and medical assistance benefits to refugees for the period of 36 months. Section 412(e) of the Act, however, simply states that the Director "is authorized" to extend the benefits and reimbursements to states "during the thirty-six month period

beginning with the first month in which such refugee has entered the United States . . . ." The language of section 412(e) is not mandatory and does not direct that the Secretary make those benefits available for a period of 36 months. It is merely permissive and confers discretionary authority upon the Director. As decided by the district courts in all of the cited cases, we also hold that the language of section 412(e) is plain and unambiguous, and requires the conclusion that the period during which the benefits were authorized was not intended as a minimum period of required assistance, but rather as a limitation during which benefits could be paid.[4]

█ It is clear from the language of the Act as well as its legislative history that Congress intended to grant the Secretary discretionary authority to administer the various programs under the Act, and that, for budgetary and other reasons, the authority be broad and flexible.[5] It is basic

1. The regulations governing the payment of benefits to refugees were promulgated by the Secretary of Health and Human Services pursuant to section 412(a)(9) of the Immigration and Nationality Act, as amended by the Refugee Act of 1980 (8 U.S.C. § 1522). The challenged regulations were published in the form of a Notice of Proposed Rulemaking on December 11, 1981 in 46 F.R. 60629 and in interim final form on March 12, 1982 in 47 F.R. 10841 *et seq.*

2. The legal validity of the regulations challenged in this case has been upheld by each of the courts. *See Ngou v. Schweiker,* 535 F.Supp. 1214 (D.D.C.1982) (Summary Judgment entered in favor of Secretary of HHS); *Cha Vang Seng v. Gibbs,* C.A. No. C82–337C, W.D.Wash. (intervening plaintiff's motion for preliminary injunction against HHS denied for failure to establish likelihood of success on the merits, May 21, 1982); *Mai Trinh v. Douglas,* C.A. No. CV–82–1789, C.D.Cal. (preliminary injunction denied based on absence of likelihood of success on the merits, June 3, 1982); *Graham v. Schweiker,* 545 F.Supp. 625 (S.D.Fla. 1982) (preliminary injunction denied for lack of likelihood of success on the merits); *Lopez v. Schweiker,* C.A. No. 82–1204, S.D.Fla. (temporary restraining order denied for absence of likelihood of success on the merits, June 22, 1982); *C.S.V., M.Q. and J.G. v. Schweiker,* C.A. No. C–82–0476, D.Utah (Summary Judgment entered for Secretary, February 8, 1983).

3. The Director of the Office of Refugee Resettlement is the responsible federal official named under the Act. From the record it appears that the Director chose to implement the program authorized under the Refugee Act of 1980 primarily through reimbursements to states rather than through the direct provision of assistance to refugees. At the time of the issuance of the challenged regulations, the Secretary of Health and Human Services was Richard Schweiker.

4. As stated by Judge Gesell in the *Ngou* case: "Section 1522(e)(1) of 8 U.S.C. authorizes 100 percent cash and medical assistance to refugees for 36 months but does not require it." Judge Gesell went on to state: "Although there was much debate in Congress over the appropriate duration of assistance which should be authorized, there is no indication in the legislative history that Congress intended to mandate payments for the full 36 months."

5. In denying an application to set aside the challenged regulations, the court in *Mai Trinh v. Douglas* also found that "[t]he Secretary had discretion to act." In the *C.S.V., M.Q. and J.G.* case, the district court of Utah also found that the Act gave "broad discretion to the director over distribution of financial assistance." Commenting upon immigration, it has been observed that: "The administration of the Immigration Act veritably teems with discretion . . ." and that "[t]he underlying scheme of the

that "in matters of statutory construction, the duty of this Court is to give effect to the intent of Congress," and that the "first reference is, of course, to the literal meaning of the words employed." *Flora v. United States,* 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958). *See also Fortin v. Marshall,* 608 F.2d 525, 527 (1st Cir.1979). If a literal reading does not answer the question, recourse may be had to the entire statutory scheme and to legislative history. *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corporation,* 545 F.2d 754 (1st Cir.1976) ("... a statute's plain language is the primary indicator of its meaning." *Id.* at 756 and cases cited therein).[6] There is no doubt that the Secretary, and through him the Director of the Office of Refugee Resettlement, had the discretionary authority to determine not only the amount of benefits paid under the program but also their duration.[7]

Although in Congressional debate a responsibility was recognized toward the special plight of refugees, it is apparent that the Congress could not respond to their need without limitations, and consequently maximized the period during which they might receive benefits. Nowhere in that debate, however, does it appear that Congress required that those benefits be paid for a full 36-month period. It is also evident from the language of the Act that, in order to administer the complex program of

benefits in accordance with the objectives and purposes of the Act, Congress intended that the administrators of the program have a wide degree of discretion over the distribution of refugee assistance resources.

■ Plaintiffs also contend that, in exercising that discretion by issuing the challenged regulations, the Secretary's decision was arbitrary and capricious, and not in accordance with law. The record on appeal, however, leaves no doubt that the regulations were issued after reasoned and considered examination based on relevant factors affecting the entire refugee program. Under section 412(a)(3) of the Act, the Director must "make a periodic assessment, based on refugee population and other relevant factors, of the relative needs of refugees for assistance and services ... and the resources available to meet such needs." Complying with that directive, the Office of Refugee Resettlement conducted studies which indicated that budgetary estimates required for the operation of the refugee assistance program necessitated a reduction in cash and medical assistance benefits since other vitally important aspects, such as social resources and educational programs for refugee children, were affected by the amount paid in cash and medical assistance.[8]

It is particularly noteworthy that section 412(a) of the Refugee Act of 1980 provides that:

---

Act seems to be to avoid conferring legal rights upon aliens." Davis, *Cases on Administrative Law* 466 (5th ed. 1973).

**6.** In the *C.S.V., M.Q. and J.G.* case, the court also held that the *plain language* of § 1522(e)(1) refuted the argument that the Director did not have authority to reduce the *period* of eligibility, although plaintiffs in that case conceded the Director's authority to reduce the *amount* of assistance.

**7.** The court in *C.S.V., M.Q. and J.G.* granted defendant's motion for Summary Judgment, and denied plaintiff's motion for Summary Judgment. It examined the contention of plaintiffs that the word "during" in section 412(e) of the Act should be construed to require payment "throughout the duration of the 36 month period." Judge Winder, however, concluded that a second definition, urged by defendant in that case, to mean "at a point in the course of" "would give the director flexibil-

ity in determining the period of time during which payments would be made ... which in fact appears to be the only definition which could be read into section 1522(e)(1) for it to be consistent with the non-mandatory language of section 1522(e)(1) (authorized versus shall) and the objectives and purposes of the Act ...." Plaintiffs here made a similar contention in the district court.

**8.** Judge Hall in *Mai Trinh v. Douglas* noted: "The Secretary was confronted with a serious budgetary problem and he needed to take effective action to remain within the limits of his appropriated funds. The Secretary considered a variety of options before deciding on the formula found in the challenged regulations .... There was a thoroughly deliberate explanation of alternative methods for accommodating the short fall of funds."

"(1) In providing assistance under this section, the Director shall, *to the extent of available appropriations,* (A) make available sufficient resources for employment training and placement in order to achieve economic self-sufficiency among refugees as quickly as possible, (B) provide refugees with the opportunity to acquire sufficient English language training to enable them to become effectively resettled as quickly as possible, (C) insure that cash assistance is made available to refugees in such a manner as not to discourage their economic self-sufficiency . . . ." [Emphasis added.] 8 U.S.C. § 1522(a)(1)(C).[9]

The oral argument and the briefs on this appeal indicate that the decision to reduce cash and medical benefits was based on consultations and investigations with state agency representatives of the refugee assistance programs. As a result, it was the opinion of the Director that:

(1) payments for a 36 month period had the effect of discouraging refugees from attaining self-sufficiency at the earliest possible time, and

(2) there was more of a need for assistance, as well as more progress toward self-sufficiency, in the first 18 months of the refugees' residence in the United States.

The record before us on appeal clearly reflects the thorough consideration that was given to the matter prior to the issuance of the challenged regulations. The question before the court is not the wisdom of the Secretary's decision, but whether the decision has a rational basis and is lawful under the pertinent statute. Since the regulations have a rational basis and are lawful, we will not substitute our discretion for

that of the Director in determining priorities among the benefits authorized under the Refugee Act of 1980. Neither may we direct that the Secretary make payments for a period that Congress explicitly left to his discretion.[10] Moreover, we have been reminded by the Supreme Court that "[t]he interpretation put on the statute by the agency charged with administering it is entitled to deference." *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

Since we hold that the Secretary's decision to issue the challenged regulations which reduce plaintiffs' benefits did not represent a "clear error of judgment" requiring this Court to overturn his action, (*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)), we affirm.

*Affirmed.*

---

**9.** Congressional debate on the Refugee Act of 1980 reveals a clearly expressed intent to give priority under the Act to language training which was said to be the "key to the effective resettlement of refugees in the United States." 126 Cong.Rec.H 1528 (daily ed. March 4, 1980).

**10.** After the district court's opinion below, Congress, in 1982, amended section 412(e) in part,

but did not change the language of that section to prevent implementation of the challenged regulations. Congressional debate on that amendment indicates an awareness of the regulation which had already been put into effect. See 128 Cong.Rec.H 3753–3754 (daily ed. June 22, 1982).