**Valery BOWMASTER, et al., Plaintiffs,**

v.

**Michael PETIT, et al., Defendants.**

**Civ. No. 83–0171–B.**

United States District Court,
D. Maine.

Dec. 6, 1983.

Kathleen C. Caldwell, Soloman S. Goldman, Pine Tree Legal Assistance, Bangor, Me., for plaintiffs.

Katherine Greason, Asst. Atty. Gen., Dept. of Human Services, Legal Div., Augusta, Me., William H. Browder, Jr., Asst. U.S. Atty., Bangor, Me., Nancy Nemon, Dept. of Health & Human Services, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

CYR, Chief Judge.

In January 1983, plaintiff's benefits under the Aid to Families with Dependent Children [AFDC] program were suspended upon her receipt of a $2,500 lump-sum set-

tlement in a workers' compensation proceeding. The suspension was ordered under the lump-sum rule, added to the Social Security Act by section 2304 of the Omnibus Budget Reconciliation Act of 1981 [OBRA] and enforced by the state and federal regulations promulgated pursuant thereto. Plaintiff concedes that the regulations were applied in accordance with their terms, but contends that under the statute the lump-sum rule applies only to AFDC recipients who have earned-income during the month in which a lump-sum payment is received.[1]

In this class action against the Secretary of Health and Human Services [Secretary] and the Commissioner of the Maine Department of Human Services [Commissioner], plaintiff seeks declaratory and injunctive relief preventing the defendants from applying the lump-sum rule to the plaintiff class, which was certified on July 8, 1983 and is defined as follows:

> All residents of Maine (1) who have, or will have, their AFDC benefits terminated because of the receipt by the assistance unit of 'non-recurring (sic) lump-sum' income, pursuant to M.P.A.M. Chapter II, Section C, Page 9, and (2) who did not, or will not, receive any earned income during the month in which the 'lump-sum' income was or will be received.

Plaintiff moves for a preliminary injunction "enjoining the defendant[s] from terminating and continuing the termination of AFDC benefits of the Plaintiff and the class she ... represent[s] because of the receipt of non-recurring (sic) lump-sum income."

*Standard For Preliminary Injunctive Relief:*

In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will

---

**1.** Since the Court rejects plaintiffs' interpretation of section 2304, it need not consider the issue, neither raised nor addressed by the par- ties, as to whether a workers' compensation award constitutes "earned income."

suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). Although ordinarily each of the four criteria must be met, *cf. Wald v. Regan,* 708 F.2d 794, 801 (1st Cir.1983) [holding that no showing of irreparable harm need be made where the law can be stated with "definitiveness."], "the probability-of-success component has loomed large in cases before [the First Circuit]." *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981). *See Wald v. Regan, supra.* Accordingly, and since this case presents a purely legal question, the Court begins there.

### Likelihood of Success on the Merits

Section 2304 of OBRA added section 402(a)(17) to the Social Security Act, 42 U.S.C. § 602(a)(17), which reads as follows:

(17) ... if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A);

The parties differ as to the proper interpretation of the phrase *"person specified in paragraph (8)(A)(i) or (ii)."* [2] Paragraphs (8)(A)(i) and (ii) provide as follows:

(8)(A) ... with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with

---

**2.** A number of courts have interpreted this provision. Two, i.e., *Sweeney v. Affleck,* 560 F.Supp. 1118 (D.R.I.1983) and *Vermeulen v. Kheder,* No. 82–135 bench ruling (W.D.Mich. June 3, 1982), have adopted the interpretation proffered by plaintiff. The decisions of six other courts support the Secretary's position. *Faught v. Bradford,* 577 F.Supp. 1180 (S.D.Iowa 1983) [granting summary judgment in favor of Secretary; reversing position taken in ordering preliminary injunction]; *Callejas v. McMahon,* C–83–3136 EFL (N.D.Cal. Sept. 2, 1983) [entering summary judgment for defendant]; *Walker v. Adams,* 578 F.Supp. 50 (W.D.Ky.1983) [deny-

ing motion for preliminary injunction]; *Douthit v. Heckler,* 577 F.Supp. 88 (D.Neb.1983) [rejecting plaintiff's interpretation, but ordering preliminary injunction because plaintiff had been disqualified, reinstated and then disqualified again despite apparently having received no lump-sum payment after reinstatement]; *Reed v. Lukhard,* 578 F.Supp. 40 (W.D.Va.1983) [granting preliminary injunction because plaintiff had "colorable" chance of success and other factors weighed heavily in plaintiff's favor, but casting doubt on the *Sweeney* court's analysis]; *Clark v. Harder,* 577 F.Supp. 1085 (D.Kan.1983) [denying motion for preliminary injunction].

dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month);

42 U.S.C. § 602(a)(8)(A)(i) & (ii).

Plaintiff contends that since paragraph (8)(A) historically has been the AFDC provision dealing with earned income and since (8)(A)(i) and (ii) both address the earned-income exclusion, the phrase "person specified in paragraph (8)(A)(i) or (ii)" should be construed to mean persons with earned income. The argument has some merit. If, as the defendants contend, the disputed phrase means "dependent child ... or other individual ... whose needs are taken into account in making [the determination of need]," why did Congress refer to (8)(A)(i) and (ii) instead of paragraph *(a)(7)*, which defines (or gives to the states the right to define) those persons whose needs are to be considered?[3] But plaintiff's contention that the meaning of the disputed phrase is so clear that its legislative history may be disregarded, *see Thongsamouth v. Schweiker*, 711 F.2d 465, 468 (1st Cir.1983), is "wishful thinking." *Reed v. Lukhard*, 578 F.Supp. 40, 44 (W.D.Va.1983). The ambiguity arises from the fact that paragraphs (8)(A)(i) and (ii) do not really "specify" persons at all. Rather, those provisions include a *reference* to all AFDC recipients (the class defendants contend is "specified") and they "affect" only those of the referenced persons who have earned-income (the class plaintiffs contend is "specified"). About all that is "clear" is that the

paragraph 17 cross-reference to paragraph 8 is ambiguous. *See Douthit v. Heckler*, 577 F.Supp. 88 (D.Neb.1983). Therefore, in interpreting the statute the Court must consider its legislative history, *Thongsamouth v. Schweiker*, 711 F.2d at 468, and give due regard to the Secretary's interpretation of the relevant provisions, *see Drysdale v. Spirito*, 689 F.2d 252, 261 (1st Cir.1982).

The Senate Finance Committee explained the lump-sum provision as follows:

*Present law.*—Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.

*Committee amendment.*—The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility. The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months. Thus, if such income exceeded the standard of need in the month of receipt, the family would be ineligible in that month. In addition, any amount of the income that exceeds the initial month's needs standard would be divided by the monthly needs standard, and the family would be ineligible for aid for the number of months resulting from that calculation.

*Estimated savings.*—

---

3. *Drysdale v. Spirito,* 689 F.2d 252, 259 (1st Cir.1982), indicates that there is no distinction between persons referred to in paragraphs (7) and (8):

The language of subsection (a)(8)(A)(ii) [identifying persons], by and large, tracks the language of subsection (a)(7); indeed the subsections refer to one another. There is no indication in the language of the statute or in the legislative history suggesting more than an intent to echo subsection (a)(7), ...

| Fiscal year: | Millions |
|---|---|
| 1981 . . . . . . . . . . . . . . . . | . . . |
| 1982 . . . . . . . . . . . . . . . . | $5 |
| 1983 . . . . . . . . . . . . . . . | 5 |
| 1984 . . . . . . . . . . . . . . . | 5 |

Senate Report No. 97–139, 97th Cong., 1st Sess., June 17, 1981, *reprinted in* (1981) U.S.Code, Cong. & Admin.News 396, 692, 771.

*Count lump-sum payments.*—Under present law, any payments that meet the definition of income (e.g., retroactive social security benefits) are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered a resource in the months thereafter.

The committee amendment would require that large payments, together with other income remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program. If such income exceeds the standard of need, the household would be ineligible for aid. Any amount of the income that exceeds the monthly needs standard would be divided by the monthly needs standard, and the household would be ineligible for aid for the number of months resulting from that calculation. Any remaining amount would be counted as income in the first month following the period of ineligibility.

*Id.* at 702. The House Conference Report states:

4. *Treatment of income in excess of the standard of need; lump sum payments*

Both the House bill and the Senate amendment included the following identical provision which was agreed to by the conferees:

For purposes of AFDC, income received in a month must be considered available as income in the month it is received and also in future months.

Thus, if such income exceeded the standard of need in the months of receipt, the family would be ineligible in that month. In addition, any amount of the income that exceeds the initial month's needs standard would be divided by the monthly needs standard, and the family would be ineligible for aid for the number of months resulting from that calculation.

House Conference Report No. 97–208, *reprinted in* (1981) U.S.Code, Cong. & Admin.News 1010, 1341.

One court has reasoned that the passage in the Senate Finance Committee Report, which states that the "amendment would require that large payments, *together with other income remaining after the application of disregards*, be considered available to meet ongoing needs in the AFDC program . . .," *id.* at 702 (*emphasis added*), "makes clear the Congress intended the 'lump sum' policy to apply only to persons who have 'other income.' " *Sweeney v. Affleck,* 560 F.Supp. 1118, 1125 (D.R.I. 1983).[4] But the *Sweeney* interpretation proves more than its conclusion, which is that only recipients with earned income are "specified" in (8)(A)(i) or (ii). The *Sweeney* interpretation would require the conclusion that only persons with earned income *in excess of the disregards* are to be considered "specified" in (8)(A)(i) or (ii). "It is more likely that the [quoted] language merely means that other income, *if any*, is to be added to the lump sum, but only after the application of any disregards which may apply." *Faught v. Bradford,* 577 F.Supp. 1180, 1186 (S.D.Iowa 1983) [emphasis in original].

The legislative history indicates that Congress meant to eliminate the "perverse [incentive] to spend such [lump-]sum income as quickly as possible in order to retain AFDC eligibility." Senate Report No. 97–139, at 771.[5] Both the nature of this con-

---

**4.** If the emphasized portion of the quoted passage read—"only if other income remains after the application of the disregards," the interpretation suggested in *Sweeney* might be considered "clear."

**5.** Plaintiff points out that the provision is ill-suited to serve this purpose since an AFDC family can avoid the lump-sum rule simply by discontinuing AFDC benefits during the month or months in which it receives a lump-sum payment. If the lump sum is exhausted while the

gressional purpose and the language used in the committee reports indicate that Congress intended to "require states to consider *all* lump-sum payments as income available to meet a family's needs." Senate Report, *supra*, U.S.Code, Cong. & Admin.News, at 820 [*emphasis added*].

*Sweeney* does proffer an explanation as to why Congress might have chosen to apply the lump-sum rule only to families with earned income:

> Families with earned income logically stand in a different position with respect to need for AFDC funds, after a 'lump-sum' has been received, than do families without such income. Families with earned income who are still eligible for AFDC benefits are, by definition, still needy. These families, however, have demonstrated the capability for employment. With another source of income still available after receiving the 'lump-sum' income the family may be less likely to totally exhaust that sum.

*Sweeney v. Affleck*, 560 F.Supp. at 1125. Yet absent some indication that it was considered by Congress, generalized conjecture is of little guidance in determining legislative intent.

Of course, in given instances it is true that an AFDC family with earned income *may* be less likely to yield to the urge to spend lump-sum income as soon as possible. But the fact is that it is impossible to generalize that the incentive to spend lump-sum income as quickly as possible in order to retain AFDC eligibility is commensurate with the availability of earned income. The desire to retain AFDC eligibility may lead an AFDC family with earned income *either* to spend its lump-sum income as soon as possible *or* to abandon employment; *both;* or *neither.* On the other hand, an AFDC family without earned income would have but one alternative to the loss of its AFDC

eligibility—that of spending its lump-sum income as soon as possible. For this reason, the AFDC family *without* earned income, becomes, whether fairly or unfairly (a congressional concern), a more, rather than a less, likely target of congressional efforts to discourage the precipitous expenditure of lump-sum income.

Finally, the Court

> ... must respect Health and Human Services' interpretation of its own governing statute—assuming such to be Congress's (sic) intent where the legal issue is minor, interstitial, and imbued with ... complexity. *Social Security Board v. Nierotko*, 327 U.S. 358, 368–69, 66 S.Ct. 637, 642–643, 90 L.Ed. 718 (1946); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Constance v. Secretary of Health and Human Services*, 672 F.2d [990] at 995. The Secretary's interpretation ... is consistent with ... congressional use of the relevant terms. The statute is highly technical.... Under these circumstances, to give weight to the agencies' interpretation of the statute promotes its coherent and consistent administration; to hold to the contrary would risk disruption, not only here but elsewhere in the program where similar words are used in other rules and regulations. [There is no] 'compelling indication' that the agencies' interpretation of the statute is wrong. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). *See also Schweiker v. Hogan*, 457 U.S. 569, 586, 102 S.Ct. 2597, 2608, 73 L.Ed.2d 227 (1982).

*Drysdale v. Spirito*, 689 F.2d at 261.

Joining the clear majority of those courts which have addressed this issue, the Court therefore concludes that plaintiff has failed to establish a likelihood of success on the

family is off AFDC, the payment will not be counted (either as income or wealth) in calculating benefits once the family returns to the rolls. Although the Government contends that states have promulgated regulations to close this "loophole," the Commissioner admits that the "loophole" remains open in Maine. But since

this "loophole" does not further the statute's purposes *as construed by plaintiff,* and in light of the clear evidence as to the congressional intent, the Court does not view the "loophole" as contraindicating the Court's interpretation of the statute.

merits. Accordingly, plaintiffs' motion for a preliminary injunction must be DE-NIED.[6]

---

**6.** Since "the moving party must exhibit a likelihood of success on the merits," *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981), plaintiffs' failure to do so obviates the need to address the three remaining prerequisites to preliminary injunctive relief.