Delbert F. WYLIE and Jeannette R. Wylie, individually and on behalf of Eugene J. Wylie, a minor, and Everett J. Wylie, Plaintiffs,

v.

Donald E. KITCHIN, individually and as Commissioner of the St. Lawrence County Department of Social Services, and Cesar A. Perales, individually and as Commissioner of the New York State Department of Social Services, and Margaret Heckler, as Secretary of the United States Department of Health and Human Services, Defendants.

No. 83–CV–440.

United States District Court, N.D. New York.

June 20, 1984.

North Country Legal Services, Inc., Canton, N.Y., for plaintiffs; Jerry C. Leek, Canton, N.Y., of counsel.

St. Lawrence County Attorney, Charles E. Palm, Canton, N.Y., of counsel, for Kitchin.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for Perales; Patricia E. P. Vincent, Asst. Atty. Gen., Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for Heckler; Paula Ryan Conan, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiffs, former recipients of Aid to Families with Dependent Children ["AFDC"], bring this action for declaratory and injunctive relief challenging the application of the so-called "lump sum rule." [1] Plaintiffs' AFDC benefits were terminated when plaintiff Jeannette Wylie received an unexpected lump sum of money. Plaintiffs contend that Congress intended the lump sum rule to apply only to those AFDC recipients who have earned income. As the plaintiffs have no earned income they allege that their benefits were wrongfully terminated. Defendants contend that Congress intended the lump sum rule to apply to all AFDC recipients regardless of whether they have earned income.

The plaintiffs have moved for a preliminary injunction and the defendants have cross-moved for summary judgment. The parties have stipulated to all the material facts. Oral argument on the motions was heard on November 21, 1983 and all supplemental briefs are now before the court.

While the court is not unaware of the hardships that loss of AFDC benefits will cause the plaintiffs, the court finds that the plaintiffs' motion for preliminary injunction must be denied and the defendants' motion for summary judgment must be granted.

## BACKGROUND

On February 22, 1983, plaintiff Jeannette Wylie received the sum of $1,401.20 as the result of an out-of-court settlement of a wrongful death action in which she was a distributee. None of the other plaintiffs was entitled to any of these proceeds. By February 28, 1983, Mrs. Wylie had spent all of the money she had received in the settlement.[2] On or about February 24, 1983, she

---

1. Section 602(a)(17) of Title 42, United States Code and the federal and state regulations promulgated pursuant to thereto are collectively known as "the lump sum rule."

2. Mrs. Wylie spent the entire settlement proceeds on items for her family. The breakdown is as follows:

| | |
|---|---|
| Roof repairs (receipt 2/25/83) | $ 265.00 |
| Roofing including nails & supplies (receipt) | 17.00 |
| Repair broken window (receipt 2/22/83) | 10.17 |
| Repair furnace | 15.00 |
| Repair rotted bathroom floor | 20.00 |

reported the receipt of the money to the St. Lawrence County Department of Social Services ["SLCDSS"] and returned uncashed two public assistance checks she had received for February, 1983.

By formal notice dated March 3, 1983, the SLCDSS terminated assistance to the entire Wylie family. The Wylie household at the time consisted of Delbert and Jeannette Wylie, their 20 year old son, Everett, and their minor son, Eugene. The first time that the plaintiffs realized that the receipt of the lump sum would result in a termination of public assistance was on March 3, 1983 when they received the notices of discontinuance sent by SLCDSS.[3] The notices also informed the plaintiffs that they had a right to a fair hearing to review the termination. Rather than request a fair hearing, the plaintiffs commenced this action seeking a declaratory judgment that the lump sum rule does not apply to them because they do not have any earned income.

The parties have consented to the imposition of a temporary restraining order whereby all of the plaintiffs are continuing to receive their public assistance, medicaid, and food stamp benefits pending the outcome of this action. All parties concede that termination of the plaintiffs' public assistance will have serious consequences for the Wylies. These consequences include the possible loss of their home; the possible loss of their only vehicle which would hamper their ability to obtain food and medical care; possible loss of heat and electricity; and marked reduction in their ability to purchase necessities such as food, clothing, and medical care.

## DISCUSSION

To prevail on a motion for a preliminary injunction a plaintiff must make "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

The court finds from the facts presented that plaintiffs have demonstrated that they will suffer irreparable harm if this court does not issue a preliminary injunction. The Wylies are in danger of losing their home, their transportation, and their access to the necessities of life such as food, clothing, and medical care if their public assistance is terminated. While the government argues that the Wylies may have access to other social programs to help ease the loss of their AFDC benefits, the government concedes that termination of the benefits would result in a substantial loss of income to the family. A Virginia federal district court, in addressing the issue of irreparable harm in the context of termination of AFDC benefits, recently stated:

> The hunger or indignities that one may have to suffer from the unavailability of funds cannot be fully remedied by future payment of those sums. When the money is essential for life's basic necessities

| | | |
|---|---|---|
| Repair kitchen ceiling | $ | 20.00 |
| Bottled gas for cooking (receipt 2/24/83) | | 37.08 |
| Replace gas stove (receipt 2/23/83) | | 50.00 |
| Transportation costs for taking Everett to dentist | | 20.00 |
| Paid old grocery bills (receipt) | | 218.95 |
| Paid insurance premium for truck (loan) (receipt 2/23/83 from Arnold Wylie for insurance paid in 1981) | | 350.00 |
| Purchase truck tires (receipt 2/24/83) | | 67.41 |
| Repair truck (receipt 2/23/83) | $ | 31.15 |
| Purchase school manual for Eugene (receipt 2/24/83) | | 10.50 |
| Laundromat charges | | 10.00 |
| Purchase clothing for children | | 200.00 |
| Misc. (groceries and household items) | | 58.94 |
| | | $1,401.20 |

**3.** The SLCDSS contends that in January, 1982, as directed by the state, it sent a letter to all recipients of AFDC explaining the changes in the law resulting from the Omnibus Budget Re-

the considerations go beyond the mere "financial" ones that defendants say this case involves.

*Reed v. Lukhard,* 578 F.Supp. 40, 42 (W.D. Va.1983). Clearly the plaintiffs here have shown that future reimbursement of their lost benefits would not be adequate to prevent irreparable harm to them.

The plaintiffs, however, must also satisfy the second prong of the *Jackson Dairy* test, namely: a likelihood of success on the merits or serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in their favor. The defendants contend that the plaintiffs can make no such showing and have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants argue that there are no material facts in dispute and that they are entitled to summary judgment as a matter of law. The plaintiffs have not moved for summary judgment, but when there are no material facts in dispute, a court may grant summary judgment for either party. *Project Release v. Prevost,* 722 F.2d 960, 969 (2d Cir.1983).

At the heart of this case is an issue of statutory interpretation. The claims here result from changes made to the AFDC program pursuant to the Omnibus Budget and Reconciliation Act of 1981 ["OBRA"], Pub.L. 97–35, §§ 2301 *et seq.,* 95 Stat. 843 (1981). Under the new lump sum rule, 42 U.S.C. § 602(a)(17), and its implementing regulations,[4] any nonrecurring lump sum income, together with other income remaining after the application of "disregards", is considered available to meet present and future needs of the family. If the total of such income received in any month exceeds the State's standard of need applicable to the family, the family is ineligible for AFDC benefits for a period of time, which is determined in each case by dividing the total of the lump sum and other countable income by the State's monthly need standard for a family of that size. The lump sum is considered available to meet the family's needs even if the lump sum is lost, stolen, or squandered.

A review of the relevant subsections of the statute is warranted. The lump sum rule, 42 U.S.C. § 602(a)(17) states:

(17) ... if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A);

42 U.S.C. § 602(a)(8)(A)(i) and (ii) provide:

(8)(A) ... with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

habilitation Act. None of the plaintiffs in this action can recall receiving such a letter.

4. The federal regulation is codified at 45 C.F.R. 233.20(a)(3)(ii)(D). The New York State regulation is codified at Title 18 NYCRR § 352.29(h).

(ii) shall disregard the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month);

Plaintiffs contend that the language in section 602(a)(17) that refers to persons specified in paragraph (8)(A)(i) or (ii) clearly restricts the application of the section to AFDC recipients who have earned income. Plaintiffs reach this conclusion because paragraphs (8)(A)(i) and (ii) refer to individuals who have earned income. Defendants contend that the language in 602(a)(17) that refers to paragraphs (8)(A)(i) or (ii) simply demonstrates that Congress intended to exclude certain income from consideration in computing eligibility and such "disregards" apply equally to all AFDC recipients.

This is not a case of first impression. The identical statutory interpretation question has been squarely presented to a number of federal district courts, unfortunately with inconsistent results. Thus far, four courts have accepted the plaintiffs' argument that the lump sum rule only applies to individuals who have some earned income. *Harris v. Heckler,* 576 F.Supp. 915 (D.N.J.1983); *Reed v. Lukhard,* 578 F.Supp. 40 (W.D.Va.1983); *Sweeney v. Afflack,* 560 F.Supp. 1118 (D.R.I.1983); *Vermeulen v. Kheder,* No. 82–135–CA4 (W.D. Mich. June 3, 1982).

A greater number of courts, however, have been persuaded by the argument that the lump sum rule applies to all recipients of AFDC benefits, whether they have earned income or not. *Woodruff v. Perales,* No. 82–CV–1141C (W.D.N.Y. Apr. 25, 1984); *Bowmaster v. Petit,* 576 F.Supp. 354 (D.Me.1983); *Woolfook v. Ledbetter,* No. 83–1244A (N.D.Ga. Nov. 23, 1983) *order entered,* Dec. 12, 1983; *Faught v.*

*Heckler,* 577 F.Supp. 1180 (S.D. Iowa 1983); *Calleja v. McMann,* No. 83–3136 (N.D.Cal. Sept. 2, 1983); *Walker v. Adams,* 578 F.Supp. 50 (N.D.Ky.1983); *Douthit v. Heckler,* 577 F.Supp. 88 (D.Neb.1983); *Clark v. Harder,* 577 F.Supp. 1085 (D.Kan. 1983).

After careful consideration of these decisions the court concludes that the defendants are entitled to summary judgment on the statutory interpretation issue. While the application of the lump sum rule to families without earned income will often result in severe consequences for the families involved, this court is constrained to evaluate the statute and regulations without consideration of sympathy. The role of the courts is to interpret the law, not to create it. As the Supreme Court stated in *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981), a case involving SSI benefits,

Although we understand and are inclined to be sympathetic with appellees' ... assertions ... we find this a legislative, and not a legal, argument.... Congress should have discretion in deciding how to expend necessarily limited resources. Awarding this type of benefits inevitably involves the kind of line-drawing that will leave some comparably needy person outside the favored circle.

*Id.* at 238, 101 S.Ct. at 1084.

While this court may have drawn different lines than Congress did when it drafted this statute, a fair reading of the statute, the regulations, the legislative history, and the case law interpreting the statute persuades this court that Congress intended the lump sum rule to apply to all AFDC recipients, regardless of whether they have earned income.

The lump sum rule was proposed by the Department of Health and Human Services as a way of cutting costs. The rule was included as part of the Omnibus Budget Reconciliation Act of 1981, which was an attempt by government to cut costs across the board. A secondary purpose of the rule was to discourage families from spending any lump sum they might receive as

quickly as possible so that they would requalify for AFDC benefits as quickly as possible. The Senate Budget Committee Report stated:

> *Present law.*—Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.
>
> *Committee amendment.*—The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility. The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months. Thus, if such income exceeded the standard of need in the month of receipt, the family would be ineligible in that month. In addition, any amount of the income that exceeds the initial month's needs standard would be divided by the monthly needs standard, and the family would be ineligible for aid for the number of months resulting from that calculation.

Estimated savings.—

| Fiscal year: | Millions |
| --- | --- |
| 1981 ........................ | ....... |
| 1982 ........................ | $5 |
| 1983 ........................ | $5 |
| 1984 ........................ | $5 |

5. Although there is some dispute between the parties as to the exact percentage of AFDC families that have earned income, it is clear that the overwhelming majority of such families do not.

6. At oral argument of this motion the plaintiffs withdrew Counts I, II, and IV which deal with constitutionality of the statute under the federal constitution. The parties agreed that the only issues left before the court were the statutory interpretation question and the pendent state constitutional claims. Both of these claims are disposed of by this decision.

S.Rep. No. 139, 97th Cong., 1st Sess. 505 *reprinted in* 1981 U.S.Code Cong. & Ad. News 692, 771.

There is no indication from the legislative history that Congress intended to distinguish between those recipients of AFDC who have earned income and those that do not. Congress' primary purpose in enacting OBRA was to save money. It is unlikely that Congress intended to exclude the vast majority of AFDC recipients from this cost-cutting measure.[5] The cases supporting the Secretary's position, particularly *Faught v. Heckler,* 577 F.Supp. 1180 (S.D. Iowa 1983) and *Clark v. Harder,* 577 F.Supp. 1085 (D.Kan.1983), agree that the legislative history strongly supports the defendants' interpretation of the statute. Accordingly, the court grants the defendants' motion for summary judgment on Count III of the Amended Complaint.[6]

■ Counts V and VI of the complaint allege that the regulations promulgated pursuant to the federal statute are unconstitutional because they violate the New York State Constitution. All the parties involved in this litigation have urged the court not to reach these state issues if the court should rule in favor of the defendants on the statutory interpretation question. Plaintiffs urge the court to retain jurisdiction of the issues, but abstain from deciding them until the New York State courts have had an opportunity to pass on them.[7] The defendants urge the court to dismiss the state claims entirely, as disposition of the federal statutory question here would dispose of all the federal issues in

7. The court notes in passing that the New York State courts have thus far, upheld the constitutionality of the statute and regulations. *See Knapton v. Kitchin,* No. 07604/82 (S.Ct.Albany County Apr. 27, 1984); *Schurr v. Perales,* (S.Ct. Nassau County Dec. 14, 1983); *Sutter v. Perales,* No. 6149/83 (S.Ct.Monroe County Oct. 12, 1983). *But see Davis v. Perales,* No. 43828/83 (S.Ct.New York County Nov. 29, 1983) (holding that the lump sum budgeting rule is unconstitutional as applied to plaintiff).

the lawsuit and absent a federal question the court should decline to exercise its pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The court finds that the Supreme Court's recent decision in *Pennhurst State School and Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) is dispositive of this issue. *Pennhurst* held that the Eleventh Amendment prohibits a federal court from ordering a state official to conform his actions to state law.[8] The court stated:

> It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.

*Id.* 104 S.Ct. at 911. *See also, Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 968–69 (2d Cir. 1984).

The court is without jurisdiction to direct the defendants here to conform their conduct to their own state constitution.

Accordingly, Counts V and VI are dismissed without prejudice.

IT IS SO ORDERED.

---

**8.** *Pennhurst* also held that the Eleventh Amendment prohibits a federal court from ordering a *county* official to conform his conduct to state law where it is clear that the county and the state jointly administer a program and that complete relief could not be afforded by a judgment against the county only. *Pennhurst*, 104 S.Ct. at 921.